**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

**CIVIL ACTION NO. 05-436-JBC**

**VERNON GREG SMITH,**                                                          **PLAINTIFF,**

**V.**                              **MEMORANDUM OPINION AND ORDER**

**CATERPILLAR, INC., ET AL.,**                                          **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court on the defendants' motion for summary
judgment (DE 58); the plaintiff's motion for a hearing (DE 60); and the plaintiff's
motion to amend his complaint (DE 61).  The court, having reviewed the record and
being otherwise sufficiently advised, will grant the defendants' motion and deny the
plaintiff's motions.

**I. Factual Background**

This action arises out of the separation of the plaintiff, Vernon Greg Smith,
from his employment at Caterpillar, Inc. ("Caterpillar").  Smith worked as a
maintenance technician at Caterpillar's Danville location from March 22, 1999, until
September 19, 2000.  The plaintiff acknowledges, in both his complaint and his
deposition, that he was an at-will employee.  Smith reported directly to Ken
Douglas but was sometimes supervised by Jeff Lamb.  Ken Douglas reported to
Greg Rziplinski, and Jeff Lamb reported to Operations Manager Alan Shepherd.
Rziplinski and Shepherd reported to Plant Manager Ron Griffith.  Shepherd and
Griffith are named as defendants in this case.

Caterpillar uses a "heat treat line" at its Danville plant to harden metallic parts. If the computer that monitors the heat treat line detects a mechanical problem in the line, it automatically stops the line. Smith claims that in early 2000, the computer's "fault card" began to malfunction, causing the line to stop even when no fault actually existed. He contends that Douglas and a maintenance technician resolved this problem by simply disconnecting the fault card. Thus, according to Smith, if a fault in the line actually occurred, the computer would not discover it and a safety hazard would result.

Smith discussed his concerns with Douglas but claims that Douglas was not distressed about the issue. When Smith approached Douglas with wiring prints that allegedly showed that the heat treat line was a safety hazard as modified, Douglas informed him that he had investigated the problem and that the prints relied on by Smith were inaccurate. Smith nonetheless spoke to Rziplinski about the heat treat line, and, after concluding that this meeting was unproductive, he also told Lamb that if the alleged heat treat line problem was not remedied soon, he would contact OSHA about repairing it.

The day after Smith made this comment to Lamb, Griffith met with him and an electrical engineer. After hearing the engineer's opinion that disconnecting the fault card from the computer presented a safety issue, Griffith instructed the maintenance department to address the problem in a way that kept it attached to the heat treat line. Smith claims that the problem with the heat treat line was fixed

2

shortly thereafter.  Smith also alleges that, around this time, Douglas began to give him negative performance reviews and that Shepherd began to inquire about his job performance.

On September 15, 2000, Shepherd conducted what is referred to as a "turnover meeting."[1]  Turnover meetings were held at the end of each shift; their purpose was to allow outgoing technicians to inform their replacements about the status of repairs and about further work that should be done on the next shift. Smith was present at this meeting as a member of the outgoing shift.  When Shepherd asked Smith what machines he had serviced that evening, Smith identified some of them but then stopped.  Shepherd then asked the plaintiff what other machines he had worked on that night.  When Smith responded,  Shepherd was unsatisfied with his answer and became upset with him.  Shepherd also informed Smith that he was disappointed with his lack of preparation for the turnover meeting.

After the meeting, Smith approached Shepherd and informed him that he had no right to talk to Smith the way he had.  Shepherd stated that he expected Smith to know the machines he repaired during his shift and asked Smith if he understood these expectations.  Smith did not answer this question, and Shepherd told Smith that he would be fired immediately if he did not respond.  Smith responded that

---

[1]Although the defendants claim that this turnover meeting actually occurred on September 18, 2000, the court is required at this stage to accept as true the plaintiff's version of the facts.

Shepherd could go ahead and fire him if he so desired.  Shepherd did not fire him,

however, but instead reported the incident to Ken Hartwig, who was, at the time,

the Human Resources Manager at Caterpillar's Danville plant and is also a

defendant in this case.

The next day, Hartwig prepared a written warning describing the incident at

the turnover meeting and asked Lamb to bring Smith to his office to discuss it.

Smith claims that when Lamb found him, Lamb told him that if he did not quit, he

would be fired.  When Smith arrived in Hartwig's office, Hartwig asked him to sign

the warning.  Smith refused to do so, and, according to Smith, Hartwig then told

him that he would be fired if he did not do so.  Smith again refused to sign the

warning and instead informed Hartwig that he quit.  At that point, Smith signed an

agreement to return any Caterpillar property he still possessed and left the building.

On September 19, 2005, the plaintiff filed this action in Boyle Circuit Court,

and the defendants removed it to this court.  The plaintiff alleges claims for

wrongful discharge, breach of contract, and tortious interference with his

employment contract.

**II. Standard of Review**

When considering a motion for summary judgment, the Court must determine

that there are "no genuine issues as to any material fact and the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). "[T]he plain

language of Rule 56(c) mandates the entry of summary judgment, after adequate

4

time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).  A court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

**III. Legal Analsysis**

*A. The Defendants' Motion for Summary Judgment*

i. The Plaintiff's Wrongful Discharge Claim

The plaintiff alleges that he was terminated by Caterpillar because he threatened to report an alleged safety hazard to OSHA.  The defendants point out that the plaintiff was not fired from Caterpillar but quit of his own volition.  A plaintiff may not recover for wrongful discharge if he is not, in fact, discharged from his employment.  Even if he was constructively discharged, however, he would not be entitled to relief.

To constructively discharge an employee, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the

5

intention of forcing the employee to quit, and the employee must actually quit. *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). While Smith claims that his supervisors gave him poor evaluations and sometimes talked to him in a harsh manner, these allegations fall far short of establishing that his working conditions were so "intolerable" that a reasonable employee would have quit.

Even if Smith had been terminated, his wrongful discharge claim would be pre-empted by OSHA. Although an employer may ordinarily discharge an at-will employee "for good cause, for no cause, or for a cause that some might view as morally indefensible," an employee may state a claim for wrongful discharge if his termination is "contrary to a fundamental and well-defined public policy as evidenced by existing law." *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 570 (Ky. Ct. App. 2006) (quoting *Firestone Textile Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1984)). This exception applies, however, only when the statute creating the public policy exception does not provide a structure for pursuing the claim. *Id.* (citing *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985)). Both the federal OSHA statute, 29 U.S.C. § 660(c), and the Kentucky OSHA statute, K.R.S. § 338.121(3)(b), create such a public policy exception by prohibiting the termination of employees in violation of these statutory provisions. Both statutes also provide structures for employees to pursue when alleging OSHA violations. Thus, these statutes "preempt wrongful discharge claims based on OSHA." *Hines*

*v. Elf Atochem N. Am., Inc.*, 813 F. Supp. 550, 552 (W.D. Ky. 1993).  This case is slightly different from *Hines* because the plaintiff in that case actually reported his employer to OSHA; Smith merely threatened to contact OSHA.  The court sees this as a distinction without a difference.  Indeed, it would be incongruous to hold that Smith may state a claim for wrongful discharge based on the "public policy exception" crafted by OSHA but also find that he is not subject to its exclusive remedy provisions.  The court holds that Smith's wrongful discharge claim is pre-empted by the federal and state OSHA provisions.

Finally, the defendants assert that Smith cannot demonstrate that his threatened complaint to OSHA was the cause of his separation from his employment at Caterpillar.  Given its resolution of the defendants' first two arguments against Smith's wrongful discharge claim, the court need not address this matter.  The court will dismiss the plaintiff's wrongful discharge claim.

### ii. The Plaintiff's Breach of Contract and Tortious Interference Claims

Smith also alleges that Caterpillar breached an implied employment contract when it discharged him from his employment.  Under Kentucky law, however, an at-will employee cannot state a claim for breach of implied contract because his employer may terminate him at any time.  *Wymer v. JH Props., Inc.*, 50 S.W.3d 195, 200 (Ky. 2001).  As Smith concedes that his employment was at-will, his implied breach of contract claim must be dismissed.

For similar reasons, the defendants are also entitled to summary judgment on Smith's tortious interference claims.  To recover for tortious interference, a plaintiff

must prove the existence of a valid contract. *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995). The court has already held, however, that the plaintiff had no such contract with Caterpillar; he was an at-will employee. Moreover, a party cannot interfere with the performance of its own existing contract. *See Rawlings v. Breit,* 2005 WL 1415356, at *3 (Ky. Ct. App. June 17, 2005) (holding that a defendant could not be held liable for interference with his own contract). Caterpillar cannot be held liable for tortious interference because, even if Smith did have a definable employment contract, Caterpillar was a party to it. As agents of Caterpillar, the individual defendants are similarly absolved. *See Burgess v. Paducah Transit Auth.*, No. 5:03-CV-166-R, 2005 WL 1221821, at *10 (W.D. Ky. May 23, 2005) (holding that agents of an employer could not induce breach of a contract to which the employer was a party). The court will also dismiss the plaintiff's claims for tortious interference.

### B. The Plaintiff's Motion for a Hearing

In his response to the defendants' motion for summary judgment, Smith has requested a hearing for the purpose of presenting witnesses and other evidence to support his claims. In support, Smith claims that he was unable to afford taking the depositions of witnesses during discovery. These grounds do not warrant granting his request. Because legal precedent, not a certain factual setting, requires the dismissal of Smith's claims, an evidentiary hearing will not save his claims. Smith's request will be denied.

### C. The Plaintiff's Motion to Amend his Complaint

8

The plaintiff seeks to amend his complaint pursuant to Fed. R. Civ. P. 15(a) to add claims for tortious interference with prospective advantage and tortious interference with employment. Several elements must be considered in determining whether to permit an amendment: (1) undue delay in filing; (2) lack of notice to the opposing party; (3) bad faith by the moving party; (4) repeated failure to cure deficiencies by previous amendments; (5) undue prejudice to the opposing party; and (6) futility of amendment. *Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998), *cert. denied*, 528 U.S. 842 (1999); *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). Pursuant to the court's scheduling order, the parties were required to file all motions to amend their pleadings or join additional parties no later than April 28, 2006. The current motion to amend was filed on November 28, 2006, and only after the defendants filed their motion for summary judgment. Even assuming that the claims Smith seeks to add have merit, his motion was filed seven months after its deadline. Granting his motion would also unduly prejudice the defendants by reopening a case that is now essentially closed. The court will deny Smith's motion to amend. Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (DE 58) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for a hearing (DE 60) and his motion to amend (DE 61) are **DENIED**.

9

Signed on January 8, 2007

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY